IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TOD PENROD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:13-CV-131-APR |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court on the petition for judicial review of the decision of the Commissioner of the Social Security Administration filed by the plaintiff, Tod Penrod, on April 24, 2013. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Tod Penrod, applied for Disability Insurance Benefits and Supplemental Security Income on September 24, 2010, alleging an onset date of August 30, 2010. (Tr. 149-155) Penrod's applications initially were denied on December 10, 2010, and again upon reconsideration on March 18, 2011. (Tr. 73-80) Penrod requested a hearing, and a hearing was held on February 21, 2012, before Administrative Law Judge (ALJ) Jennifer Fisher. (Tr. 26-68) Vocational Expert (VE) Marie N. Kieffer and Leta Penrod, Penrod's wife, testified at the hearing. (Tr. 26-68)

The ALJ issued her decision on April 11, 2010, finding that Penrod was not disabled. (Tr. 7- 20) The Appeals Council denied review, making the ALJ's decision the final decision

of the Commissioner. (Tr. 1-3)

At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Penrod had not engaged in substantial gainful activity since August 30, 2010, his alleged onset date. (Tr. 12) At step two, the ALJ determined that Penrod had the following severe impairments: coronary artery disease, hypertension, obesity, nephrolithiasis, history of Bell's palsy, cerebral vascular accident (mild), trigeminal neuralgia, and tobacco dependence/abuse. (Tr. 12) At step three, the ALJ concluded that Penrod did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 14)

The ALJ then assessed Penrod's residual functional capacity as follows:

> The claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 4 hours total and 20 minutes continuously, and sit 6 hours total and 1-2 hours continuously. Although the limits on continuous sitting and/or standing implicate the need to periodically change positions, the individual can remain at the workstation and on task. The claimant can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can tolerate frequent exposure to extreme cold, extreme heat, and humidity, and no exposure to work-place hazards such as dangerous moving machinery, unprotected heights, and slippery/uneven surfaces. The claimant can sustain a flexible or goal oriented pace despite needing to take an additional 3-5 minute break (for bathroom purposes) in the morning and afternoon. (Tr. 14-15)

The ALJ explained that in considering Penrod's symptoms she followed a two- step process. (Tr. 15) First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that could reasonably be expected to produce the claimant's pain. (Tr. 15) Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Penrod's functioning. (Tr. 15)

2

Of relevance, the ALJ explained that Penrod testified that he had experienced back pain since he was a child, but that it had not changed, but that he had worked despite the pain. (Tr. 15) He occasionally saw a chiropractor for the pain. (Tr. 15) Penrod could sit for an hour or so and stand for 20 minutes. (Tr. 15) After that, he experienced pain in his legs and lower back. (Tr. 15) Penrod could use his hands for a while, but after that they became numb. (Tr. 15) He was diagnosed with carpal tunnel syndrome 15 years before the hearing but never had surgery or any other treatment for it. (Tr. 15)

The ALJ determined that Penrod's back pain was not well-documented and noted that it only had been treated by a chiropractor, which is not an acceptable medical source. (Tr. 17) The ALJ also stated that Penrod's back pain was not disabling because he testified that it had not changed since the alleged onset date and that he worked despite any problems from back pain in light to medium levels of exertion for many years. (Tr. 17)

The ALJ also summarized Penrod's testimony concerning his kidney stones. (Tr. 17) Penrod stated that he had kidney stones on and off for many years. (Tr. 16) He experienced excruciating pain when the stones blocked his kidneys. (Tr. 16) He had lithotripsy and surgery to remove the stones, and recent renal testing was normal. (Tr. 16) His kidney stones caused him to urinate more frequently depending on how the stones were positioned, and he was advised to drink more water. (Tr. 16) He stated that he drank four cups an hour because he dehydrated easily, and he woke up every hour or so at night to urinate. (Tr. 16) Penrod believed that he could work if he could use the bathroom with no restrictions. (Tr. 16) At his previous job, he used the bathroom every hour or so, and it took him five minutes each time. (Tr. 16) Penrod also experienced kidney pain a couple of times per month and took Advil, but

3

that was before his recent kidney surgery. (Tr. 16) Leta Penrod also stated that Penrod got up several times per night to go to the bathroom and that during the day he took naps that lasted between 20 minutes and 2 hours. (Tr. 16)

The ALJ then stated that she did not find Penrod's statements concerning the intensity, persistence, and limiting effects entirely credible. (Tr. 16) The ALJ explained that the evidence did not support Penrod's allegations of kidney pain so bad that he had to stay in bed 10 to 15 days per month in the year before his last removal of kidney stones. (Tr. 16) Penrod did not report a history of such pain to his doctors over the prior year. (Tr. 16) When he went to the hospital on October 9, 2011, Penrod complained of acute flank pain, and on November 21, 2011, he denied having any urinary symptoms other than some flank pain. (Tr. 16) Penrod did not report the extent of urinary frequency about which he testified. (Tr. 16) The ALJ also explained that Penrod had surgery, and that the last records from his urologist did not indicate that he was having ongoing and significant kidney stone pain despite the presence of some smaller stones in the left kidney. (Tr. 16) The ALJ also found that Penrod's complaints of pain so bad that he had to stay in bed up to half a month less credible because he only took Advil and never had been prescribed any pain medication. (Tr. 16) Penrod also did not seek help for kidney or flank pain from the other doctors he saw since his alleged onset date, and he did not report having kidney-related pain to such an extent to the consultative physical examiner who asked Penrod to tell him about all of his health problems. (Tr. 16-17)

The ALJ further explained that the fact that Penrod sought medical care for flank pain related to his kidney stones in November 2011, but did not seek help for pain control at other times, and worked despite having intermittent problems with kidney stones for many years,

4

suggested that his kidney pain was not as limiting as he testified in between acute attacks. (Tr. 17) There was nothing in Penrod's records indicating that he should drink the quantities of water he testified that he drank, and the ALJ found that the amount he drank was extreme and had an obvious effect on how frequently he needed to urinate. (Tr. 17) The ALJ made some allowance for additional restroom breaks in Penrod's RFC, amounting to a break every one and one-third hours. (Tr. 17)

At step four, the ALJ determined that Penrod was unable to perform his past relevant work. (Tr. 18) Considering Penrod's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that Penrod could perfrom, including electronic accessory assembler (140,000 jobs nationally), electronics worker (140,000 jobs nationally), and small products assembler (300,000 jobs nationally).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118 (7th Cir. 2014); *Pepper v. Colvin*, 712 F.3d 351, 361-362 (7th Cir. 2013); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 852 (1972)(*quoting Consolidated Edison Company v. NRLB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed.2d 140

(1938)); *See also* **Pepper,** 712 F.3d at 361-362; **Jens v. Barnhart**, 347 F.3d 209, 212 (7th Cir. 2003); **Sims v. Barnhart**, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. **Roddy v. Astrue,** 705 F.3d 631, 636 (7th Cir. 2013)*; Rice v. Barnhart*, 384 F.3d 363, 368-369 (7th Cir. 2004); **Scott v. Barnhart**, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable " to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §423(d)(1)(A).** The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § § 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R.§§ 404.1520(b), 416.920(b).** If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c).** Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. §§ 401, pt. 404, subpt. P, app. 1; 404.1520(d).** If it does, then the impairment is acknowledged

by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. **20 C.F.R. § 404.1520(e)-(f).** If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e).** However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f).**

Penrod first argues that the ALJ's RFC determination is insufficient because she failed to account for medical evidence related to his back, neck, shoulder, and hand impairments. The Commissioner responded that the record is devoid of medical evidence prepared by an acceptable medical source that establishes a back impairment. Penrod disputes this, pointing to an x-ray contained in his chiropractor's notes.

Impairments only can be established by an acceptable medical source. *See* **SSR 06-03p**; *Young v. Colvin*, 2013 WL 1286668, *3 (N.D. Ill. March 28, 2013). The Social Security Regulations specifically list the "acceptable medical sources" who can provide evidence to establish an impairment. **20 C.F.R. § 404.1513(a).** Chiropractors are not among the identified licensed physicians considered to be "acceptable medical sources." **20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5), 404 .1527(d)(2).** Absent a diagnosis by an acceptable medical source, the court cannot consider the opinion of a chiropractor to determine whether

7

Penrod suffers from a back impairment. However, once an impairment is established by an acceptable medical source, the opinion of the chiropractor may be used to evaluate the severity of the impairment. **20 C.F.R. § 404.1513(d).**

Penrod argues that the x-ray contained in his chiropractor's notes was objective medical evidence sufficient to establish that he suffered from a back impairment and that his chiropractor's opinions should be evaluated to determine the severity. Penrod is mistaken. The x-ray on its face does not establish an impairment– a lay individual could not determine whether Penrod had an impairment by looking at an x-ray. Rather, x-rays require an interpretation by a medical professional. Here, the record is devoid of such an interpretation by an acceptable medical source. The only interpretation is Penrod's chiropractor's impression, who is not an acceptable medical source. If the ALJ had determined that Penrod suffered a back impairment, either it would have been based on the explanation of Penrod's chiropractor or her lay opinion; neither of which is an acceptable source. *See e.g.* **McBride v. Massanari**, 169 F.Supp.2d 857, 861 (N.D. Ill. 2001) (explaining that the ALJ cannot make his own independent medical findings).

In *Tadros v. Astrue*, 2011 WL 3022302, *10 (N.D. Ill. July 22, 2011), the plaintiff complained that the ALJ failed to consider evidence of carpal tunnel syndrome. The court determined that the ALJ did not err because the only evidence of carpal tunnel syndrome was that contained in the notes prepared by the plaintiff's podiatrist and chiropractor. Although the chiropractor's notes contained references to an EMG, the court rejected this evidence because the EMG results were not in the record, nor did the record contain evidence from an acceptable medical source who performed or interpreted the results. *Tadros*, 2011 WL 3022302 at *10.

Penrod similarly has not identified any medical evidence from an acceptable medical

8

source that established a back, neck, or shoulder impairment. Although the records from his chiropractor included one x-ray taken six years before his disability claim, the record was devoid of an interpretation or opinion by an acceptable medical source that established an impairment based on this x-ray. The reference to an x-ray absent an interpretation by an acceptable medical source, just like the reference to the EMG by the chiropractor in *Tadros*, does not establish an impairment. Therefore, the ALJ did not err when considering Penrod's back impairment.

The parties next dispute whether the ALJ erred when considering Penrod's kidney impairment. Penrod testified that he often had to go to the bathroom and that he could last an "hour or so" between trips at best. On some days he had to go to the bathroom multiple times in one hour. When he was working, he went to the bathroom every "hour or so" for about five minutes at a time. The ALJ did not account for hourly breaks in her RFC determination. Instead, she accounted for two additional bathroom breaks in the morning and afternoon above the two regular 15-minute breaks and lunch break. This amounted to a break every one and one-third hours over the course of the day.

The medical records did not document the frequency or length of Penrod's bathroom breaks or the amount of water Penrod should have been consuming. Thus, Penrod must rely on his own testimony regarding the frequency of his breaks. The ALJ rejected Penrod's testimony regarding the frequency of his breaks because she did not find him fully credible. Penrod argues that how much water he had to consume, and therefore how frequently he needed to use the bathroom, was a medical determination outside the purview of the ALJ. In *Wolfgram v. Astrue*, 2013 WL 211094 (E.D. Wis. Jan. 18, 2013), the court faced a similar challenge. The plaintiff suffered from diarrhea attacks, and the ALJ accommodated this by allowing three to four

9

unscheduled breaks of five to ten minutes.   The plaintiff argued that the ALJ erred by imposing his own idea on how long someone with diarrhea attacks should spend in the bathroom. *Wolfgram*, 2013 WL 211094 at *11.   The court rejected the plaintiff's argument, explaining that the ALJ relied on the plaintiff's testimony, not his own intuition, when rendering the decision, and that in any event the plaintiff did not point to any evidence suggesting that a longer duration was necessary.   *Wolfgram*, 2013 WL 211094 at *11.

Similarly, Penrod did not identify any medical evidence speaking to the amount of water he was to consume or the frequency that he had to urinate.   Absent such evidence, as explained in *Wolfgram*, the ALJ was permitted to rely on Penrod's testimony as to the frequency and amount of time spent.   Because the sole evidence was Penrod's testimony, his credibility was brought into question.   *See* ***Spaulding v. Barnhart***, 2007 WL 1610445, *5 (March 2, 2007) (considering the plaintiff's credibility as to the number of bathroom breaks, which were not documented in the medical records).   This was not the type of determination that required the ALJ to impose her own insight and render an independent medical determination.

This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. ***Schmidt v. Astrue***, 496 F.3d 833, 843 (7th Cir. 2007);   ***Prochaska v. Barnhart***, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ... can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles his opinion to great deference.   ***Nelson v. Apfel***, 131 F.3d 1228, 1237 (7th Cir. 1997); ***Allord v. Barnhart***, 455 F.3d 818, 821 (7th Cir. 2006).   However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not

entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. §404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)("subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. §404.1529(c);** *Moore v. Colvin,* 743 F.3d 1118, 1125 (7th Cir. 2014); *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005)("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective

11

medical evidence." SSR 96-7p, at *1. *See also* **Moore,** 743 F.3d at 1125*;* ***Indoranto v. Barnhart***, 374 F.3d 470, 474 (7th Cir. 2004); ***Carradine v. Barnhart***, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).
>
> ***Luna v. Shalala***, 22 F.3d 687, 691 (7th Cir. 1994); *see also* ***Zurawski v. Halter***, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, she must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2. *See* ***Zurawski***, 245 F.3d at 887; ***Diaz v. Chater***, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). She must "build an accurate and logical bridge from the evidence to [his] conclusion." ***Zurawski***, 245 F.3d at 887 (*quoting* ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000)). When the evidence conflicts regarding the extent of the claimant's limitations, the ALJ may not simply rely on a physician's statement that a

claimant may return to work without examining the evidence the ALJ is rejecting. *See **Zurawski***, 245 F.3d at 888 (*quoting **Bauzo v. Bowen***, 803 F.2d 917, 923 (7th Cir. 1986)) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

The ALJ devoted two paragraphs to discussing Penrod's credibility. First, she pointed to Penrod's testimony that he could last "an hour *or so*" between bathroom breaks, which indicates that the time was not exact. Penrod's wife also stated that he sometimes took two hour naps without waking to use the restroom. The ALJ further found it incredible that Penrod experienced such frequent urination, yet he did not report his urinary problems to his physicians. She noted that Penrod denied having urinary symptoms other than some flank pain on November 21, 2011, and did not report urinary frequency to his physician. Penrod also had a percutaneous nephrostolisthotomy with urethral stent placement on January 4, 2014, and after that did not report any kidney stone pain. His latest records from his urologist did not indicate that he was having ongoing kidney stone pain, suggesting that his condition had improved. The ALJ also pointed out that Penrod testified that he needed to spend half of the month in bed because of his kidney pain, but he was not prescribed pain medication, did not seek help for pain control, did not report experiencing kidney-related pain to such an extent to the consultative physical examiner, and continued to work. The ALJ explained that these events suggested that Penrod was not as limited between acute attacks as he testified. The absence of supporting medical records and reports to his physicians concerning his pain and frequency of urination certainly impacted on Penrod's credibility. *See **Bardgett v. Chater***, 1997 WL 126839, *8 (N.D. Ill. March 18, 1997) (explaining

that ALJ did not err in making a credibility decision regarding the plaintiff's incontinence because the ALJ noted that only two medical notes mentioned the number of daily episodes the plaintiff experienced and both were from several years prior to the ALJ's decision, which suggested that the incontinence was not severe).

Because the ALJ supported her credibility finding with numerous examples, the court cannot find that her credibility determination was patently incorrect. The ALJ did not make an independent medical assessment by determining that the amount of water Penrod drank, and consequently the frequency he needed to urinate, was excessive. Rather, she assessed the only evidence of record related to the frequency and amount of water consumed—Penrod's testimony— and determined that it was not fully credible based on all of the reasons stated above.

Based on the foregoing reasons, the decision of the Commissioner is AFFIRMED.

ENTERED this 13th day of June, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge